### JIM CLAYTON V. THE STATE.

No. 20681. Delivered February 28, 1940.
Rehearing Denied April 17, 1940.

The opinion states the case.

*Minnie M. Phipps,* of Fort Worth, and *R. B. Hood,* of Weatherford, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER; Judge.

The offense is rape; the punishment assessed is confinement in the State penitentiary for a term of fifteen years.

The State's testimony, briefly stated, shows that appellant and a companion went through the country as sewing machine repair men. On the 28th day of March, 1939, they appeared at the home of J. W. Cagle during his absence and by force and threats raped Mrs. Cagle. When they left, they threatened to kill her if she ever told anyone about it. About three days later she attempted to commit suicide by taking concentrated lye. She was taken to a doctor who saved her life by the use of a stomach pump. She made no mention of the rape until about eleven days after the alleged occurrence, when she first told her mother-in-law and then her husband about it. She was then examined by a physician, who found bruises on her body and her privates lacerated, swollen and discolored. The discoloration indicated that it was approximately a week or ten days standing. Prosecutrix testified that the reason she made no report thereof at an earlier date was because appellant and his companion threatened to kill her and her family and she believed them; that she had a horror of facing a courtroom full of people and being disgraced. Appellant took the witness stand in his own behalf. He admitted that he and his companion were at Mrs. Cagle's home at the time in question, but denied that he, either alone or together with his companion, made any assault on Mrs. Cagle or raped her. Under these circumstances, we believe the evidence is sufficient to sustain the jury's conclusion of appellant's guilt. See Pettus v. State, 58 Tex. Crim. Rep., 546, 126 S. W., 868, Ortiz v. State, 68 Tex. Crim. Rep., 608, 151 S. W., 1059, 35 Tex. Juris, p. 831.

By bill of exception number one, appellant complains of the action of the trial court in overruling his motion to quash the indictment on the ground of what he claims to be an "h" instead of a "b" in the word "obtain." The court ordered the original indictment sent up with the record and it is before us. We have inspected the same and it appears that in typing, the letter "h" was first struck and then the letter "b" was struck over it. We are at a loss to understand just how or in what way appellant could have been misled as to what offense he was charged with. The contention on his part in this particular seems to us to be hypercritical.

Bill of exception number two shows that appellant and George Sturdivant were separately indicted for the offense of raping Mrs. Cagle. The cases were set for the 8th day of May.

Each of the two defendant's filed an application for a severance. Sturdivant being too ill to be tried, as shown by the testimony of his attending physician Dr. Fyke, the cases were postponed to May 18. On that day Sturdivant filed a motion for a continuance, alleging therein that he was still too ill to be tried. This motion was supported by a certificate from the attending physician. Thereupon the court overruled appellant's plea for a severance and placed him on trial. It appears from the record that the term of court expired on May 27. The court may have concluded from the facts before him that Sturdivant would not recover sufficiently from his illness to be tried at that term of court and that the granting of the motion would result in a continuance of appellant's case. In such event there would be no error in the court's action thereon. See Terrell v. State, 81 Tex. Crim. Rep., 647 and authorities cited. Moreover both defendant's having filed an application for severance, it was clearly within the discretion of the court to direct the order of their trial. See Strickland v. State, 262 S. W., 75; Goforth v. State, 269 S. W., 98.

Bill of exception number seven, as qualified by the court, shows that while Dr. Fykes was testifying in behalf of the State, he was asked a hypothetical question based on facts proven upon the trial: That, if in his opinion, such conditions would create in the mind of a sensitive woman suicidal emotions. The doctor replied that such conditions would create great mental emotion in a woman of the prosecutrix's temperament. Appellent objected thereto on the ground that no man, be he a physician or not or what his training and experience was, could qualify to answer such a question. That the doctor was not shown to have had any experience with people of such character and therefore was no better qualified than the jury to pass on such a question, etc. The hypothetical question was based upon facts testified to by witnesses, showing her physical and mental condition, temperament, sensitiveness and self-consciousness, as well as her conduct subsequent to the commission of the alleged offense. The principle is fairly well settled that physicians and surgeons of practice and experience are experts, and that their opinions are admissible in evidence upon questions that are strictly and legitimately embraced in their profession. We think, however, that the State qualified the doctor as an expert by showing that he attended Northwestern University at Chicago, Illinois, and that he had been engaged in the practice of medicine and surgery for 41 years, had taken post-graduate work and had operated a hospital for

the past 19 years. See Landry v. State, 117 Tex. Crim. Rep., 396, 35 S. W. (2d), 433; Guse v. State, 260 S. W., 852, 97 Tex. Crim. Rep., 212. Moreover we think the objection went more to the weight of the testimony than to its admissibility.

By bill of exception number eight, appellant complains because J. W. Cagle, the husband of prosecutrix, was permitted to testify, among other things, that her baby was about nine months old at the time of the commission of the offense. Appellant objected on the ground that such question was immaterial. We need not discuss the question of whether this testimony was material or immaterial, because prosecutrix had theretofore testified without any objection on the part of appellant that she had two children, the youngest of which was about ten months old at the time of the trial. It is well-settled in this State that whenever testimony is admitted without objection which is of similar or like character as that objected to, no reversible error is shown. See Sparkman v. State, 82 S. W. (2d), 972 and authorities there cited.

By bill of exception number nine, appellant complains of the testimony given by the husband of prosecutrix to the effect that before the date of the alleged offense, he and his wife were happy in their married life. Appellant objected thereto on the ground that it was irrelevant and inflammatory. The record shows that this testimony was elicited by the State on redirect examination of the witnesses after appellant on cross-examination had elicited the fact that about seven months after they were married, they separated and lived apart for about two weeks. We think under these circumstances the testimony was admissible to rebut the fact sought to be shown by appellant that the witness and his wife were unhappy; at least that her act in attempting to commit suicide may have been due to their domestic relations rather than to any humiliation produced by appellant's act.

By bill of exception number ten appellant complains of the following testimony given by Mrs. Rockwell: That in the month of March, appellant and another man came to her place of business, and engaged her in conversation. That appellant said he was a bachelor and asked her if there were any widows or old maids in the community. The record shows that appellant testified that he and Sturdivant drove up to the place of business of Mr. and Mrs. Rockwell, ate some canned goods, and appellant asked Mrs. Rockwell where the old maids and widows were for old bachelors and laughed about it. However, appellant on his direct examination recounted the course of his

travels on the day in question, the places he had visited, the people he saw and the subject of the conversations he had with them, including the conversation with Mrs. Rockwell. Consequently he has no just grounds of complaint.

Bill of exception number eleven is deficient in that there is no statement in the bill that the ground was not in the same condition and that many people had visited the premises where the offense is alleged to have been committed. Such statement appears only as a ground of objection and is not a certificate by the court. See Viley v. State, 92 Tex. Crim. Rep., 395; Banks v. State, 131 Tex. Crim. Rep., 196, Branch's Ann. P. C. Sec. 1864.

By bill of exception number 12, appellant complains of the action of the trial court in permitting the district attorney, on cross-examination of appellant, to ask him if he had not been charged several years ago with a violation of the law, to which appellant replied that he had—that they were misdemeanors. Appellant objected because such transactions were too remote and did not involve moral turpitude or affect his credibility as a witness, etc. The court, in his qualification to the bill, shows that on cross-examination appellant was asked by the district attorney if he had ever lived in Charlotte, N. C., to which he replied that he had been there. He was then asked if he there went by the name of Ted Koney to which he replied: "I used that name when I got arrested and finger-printed and turned loose." That he also used the name of Ted Oney in Birmingham, Alabama, once That he was arrested once in Jasper, Alabama, for giving a worthless check under the name of Ted Oney, and arrested in Birmingham on a charge of embezzlement because he failed to return a lady's sewing machine when she wanted it. We are of the opinion that under the qualification of the court, the bill fails to reflect reversible error. Some of the offenses with which he was charged involved moral turpitude and were admissible for the purpose of affecting the credibility of his testimony. See Dulin v. State, 60 Tex. Crim. Rep., 376; Turman v. State, 50 Tex. Crim. Rep., 13, Branch's Ann. P. C. Sec. 167. Moreover the appellant objected to all this testimony, a portion of which was clearly admissible. See Sparkman v. State, cited supra.

By bill of exception number 14 appellant complains because the State was permitted to prove that the prosecutrix's reputation for truth and veracity was good where she was born and reared and where she was best known. It appears from

the record that prosecutrix was subjected to a very rigid cross-examination and was interrogated relative to the testimony she gave before the grand jury, and members of the grand jury were called by appellant as witnesses with the sole purpose of discrediting her. Prosecutrix had but recently come into the county in which the offense was committed and was not well-known to the citizens of Parker County. Under such circumstances, it was permissible to show her good reputation for truth and veracity. See Brown v. State, 52 Tex. Crim. Rep., 267; Harris v. State, 49 Tex. Crim. Rep., 338; Goode v. State, 57 Tex. Cr. R. 220, 239.

By bills of exceptions numbers 17 and 18, appellant complains because the court overruled his motion to permit the jury to make a physical examination of appellant, or that the court appoint three disinterested persons to make such examination and report their findings. This the court declined to do and appellant excepted. We do not see any just ground of complaint in this respect. Appellant could have selected any number of good citizens of Parker County to examine his privates and then testify as to what they found.

Bill of exception number 19 presents the most troublesome question in the case. The bill upon its face shows that one of the prosecuting attorneys, in his closing argument to the jury, asked why appellant did not place the co-defendant, George Sturdivant, on the witness stand. The bill shows that the court sustained appellant's objection and instructed the jury not to consider the argument. The court qualified the bill and in his qualification thereof states that the remark complained of was made but once, etc. While the remark was improper, yet every improper remark by counsel for the State will not require a reversal of the case unless the language is manifestly harmful and prejudicial, or where some mandatory provision of the statute is violated. We do not believe that under the facts disclosed by the bill that the argument was of such prejudicial nature that the Court by his prompt action could not withdraw its prejudicial effect. In the cases of Landers v. State, 63 S. W., 557 and Grille v. State, 17 S. W. (2d), 833, this Court reversed the convictions on somewhat similar remarks because the trial court failed to instruct the jury not to consider the same, but such is not the case here.

Appellant undertakes to bring forward by a bystanders bill complaint of certain remarks by the county attorney in his argument. This purported bill falls short of the legal requirements of Sec. 9 of Art. 2237 R. C. S. in that it is attested by

only one citizen. Therefore the bill cannot be considered. We have devoted much time to a careful examination of the questions herein presented and have carefully considered all of the bills of exceptions. Some of these we have not discussed, as they appear to us to be without merit. However we did discuss most of appellant's bills. The record shows that appellant was ably represented by seasoned and astute counsel who have not overlooked any of his legal rights.

Finding no error of a reversible nature in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In the motion for rehearing in this case appellant insists that this court "did not give to said cause that careful consideration which the seriousness of the charge and the severity of the punishment called for to reach a just conclusion." The appellant's statement is far from correct. The case is troublesome in all of its phases. It is unusual and unnatural in many aspects, and is a case which called for and received in this court unusual attention on all of the questions presented. As in most cases, it is impossible and it is not considered necessary to treat each and every question that may be raised but only those which in fact present legal questions.

Complaint is specifically made that Assignment of Error No. 13 was not discussed in the opinion. This assignment presents no question of law but only goes to the weight of the evidence, and the argument in its behalf is an argument on questions of fact properly made before the jury. This court does not take into consideration questions of fact which have been presented to the jury, and it would not be proper for it to do so.

We have again considered the legal questions presented and feel that the proper conclusion was reached in the original opinion.

The motion for rehearing is overruled.